IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-03344-REB-MEH
(Consolidated with 14-cv-00425-REB-MEH)

DAVID L. HILDEBRAND,

      Plaintiff/Counter Defendant,

v.

CITY OF BOULDER,

      Defendant,

MONROE TRUCK EQUIPMENT,

      Defendant/Counter Claimant.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Michael E. Hegarty, United States Magistrate Judge**.

      Before the Court is the Defendant City of Boulder's Motion for Summary Judgment [filed March 28, 2014; docket #15].  In accordance with 28 U.S.C. § 636(b)(1)(B) and D.C. Colo. LCivR 72.1C, the matter is referred to this Court for recommendation [docket #16].  The motion is fully briefed, and oral argument would not materially assist the Court in its adjudication of the motion.  For the reasons that follow and based on the entire record contained herein, the Court RECOMMENDS that the Defendant's motion be **denied**.[1]

---

[1]Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  Fed. R. Civ. P. 72(b).  The party filing objections must specifically identify those findings or recommendations to which the objections are being made.  The District Court need not consider frivolous, conclusive or general objections.  A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and

## BACKGROUND

**I.     Findings of Fact**

The Court finds the following facts viewed in the light most favorable to the Plaintiff, who is the non-moving party in this matter.  The facts noted here constitute only those necessary for the Court's analysis of the arguments raised in the present motion.

1.      The inventor listed on the patent at issue in this case is Michael Clarkson.  Exh. A to Complaint, docket #1-1.

2.      Plaintiff, David Hildebrand, asserts ownership of the patent titled, #5,651,527 Support Structure for Use with Heavy Equipment."  Complaint, ¶ 5, docket #1.

3.      Clarkson was employed by the City of Boulder ("Boulder") as a Maintenance Person IV from approximately January 26, 1987 to June 27, 1997.  Affidavit of Denise Noe, March 26, 2014 ( "Noe Affidavit"), ¶¶ 3, 4, docket #15-1.

4.      During Clarkson's employment with the City, his supervisor, John Sewell, asked Clarkson to design a better way to load maintenance trucks with sand, which would then be spread on snowy roads.  Affidavit of Michael Clarkson, April 18, 2014 ("Clarkson Affidavit"), ¶ 3, docket #20-1; Affidavit of Lynn Stephenson, March 28, 2014 ("Stephenson Affidavit"), ¶ 3, docket #15-2.

5.      Clarkson invented a better, safer structure for loading onto and removing sand and other equipment from maintenance trucks by first creating a design on his home computer, for which he

recommendations.  *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1).  Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court.  *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

was not paid by Boulder.  Clarkson Affidavit, ¶ 4; Stephenson Affidavit, ¶ 6.

6.      Clarkson's structure was designed first to load boxes of sand onto frames with legs.  Exh. D to Motion, docket #15-4.  The frames were weight-bearing so that the boxes of sand could be stored on the frames.  Exh. E to Motion, docket #15-5.  To load the boxes of sand onto a truck, the truck would back into the frame system; the legs of the frame would fold and slide into the truck bed along with the box of sand as the truck continued to reverse.  Exh F to Motion, docket #15-6.  The other set of legs would then collapse and be incorporated into the back of the truck.  Exh. G to Motion, docket #15-7.

7.      Clarkson filed for, and received, a patent on his invention with no financial assistance from Boulder.  Clarkson Affidavit, ¶¶ 5, 6.

8.      Clarkson showed his design to his supervisor, Sewell.  Stephenson Affidavit, ¶ 6.

9.      Boulder gave approval for Clarkson to build the structures while at work.  *See* Stephenson Affidavit, ¶ 7.

10.     During his work hours, Clarkson constructed the structures at Boulder's welding shop with materials purchased by Boulder and constructed with tools provided by Boulder, such as a welding truck, welder, and torches.  *See* Stephenson Affidavit, ¶ 7; *see also* Clarkson Affidavit, ¶ 10.

11.     Clarkson primarily worked alone but, occasionally, needed assistance from a co-worker, Lynn Stephenson, during Stephenson's paid working hours.  Stephenson Affidavit, ¶ 7.

12.     Clarkson built a total of 10-12 structures during his employment with Boulder.  Stephenson Affidavit, ¶ 8.

13.     Clarkson produced an "advertisement" video marketing his structures at his place of employment during "off hours" with his supervisor's permission.  Clarkson Affidavit, ¶ 13.

14.     Before he left Boulder's employment, Clarkson was asked to attend a meeting at which he was asked for a license agreement for use of the structures.  Clarkson Affidavit, ¶ 8.  Clarkson declined because Boulder wanted the agreement free of charge.  *Id.*  However, Clarkson gave Boulder the right to use what it had paid him to make.  *Id.*, ¶ 9.

15.     No other structures were built by Boulder after Clarkson's termination of employment, and Clarkson's structures were eventually phased out.  Stephenson Affidavit, ¶ 12.

16.     After Clarkson's employment ended, Boulder purchased one of his structures through one of his suppliers, Fluid Powertech; this structure also was eventually phased out.  Stephenson Affidavit, ¶ 11.

17.     Beginning in 2002, Boulder began to purchase trucks with a "slip-in unit."  Affidavit of Steven Choquette, March 27, 2014 ("Choquette Affidavit"), ¶ 4, docket #15-8 .

18.     The slip-in unit is arguably similar to the one designed by Clarkson, as it also folds into a truck.  Choquette Affidavit, ¶ 4.  However, the slip-in unit is not designed to be a weight-bearing system like the structure designed by Clarkson.  Stephenson Affidavit, ¶ 13.

19.     Boulder owns 24 of these slip-in units, and all were purchased from Defendant Monroe Truck Equipment pursuant to a State of Colorado Department of Transportation bid.  Choquette Affidavit, ¶ 5.

20.     Boulder has no other structures similar to that designed by Clarkson.  Stephenson Affidavit, ¶14.

21.     Clarkson has not given Monroe Truck Equipment permission to practice his invention.  Clarkson Affidavit, ¶ 11.

## II.     Procedural History

On December 12, 2013, Plaintiff David Hildebrand initiated this action against Defendant City of Boulder ("Boulder").   Docket #1.   Plaintiff alleges that he owns United States Patent #5,651,527, "Support Structure for Use with Heavy Equipment."   *Id.*   He claims that Boulder currently uses his invention in its snow sanding/plowing operations and equipment without authorization in violation of the patent.   *Id.*   Plaintiff seeks injunctive relief and economic damages from Boulder.   *Id.*

On January 13 2014, Boulder filed an Answer to the Complaint. Docket #6.  Then, on March 28, 2014, Boulder filed the present motion for summary judgment arguing that it has a right to use the device, which allegedly infringes Plaintiff's patent, under the "shop rights" doctrine.  Under that doctrine, where an employer has contributed to the development of the invention, such as by paying for the employee's efforts, the employer has a "shop right" to use it free of charge and without liability for infringement.   Boulder attaches affidavits and other documents as evidence that it has a right to use the device.  Boulder states that it "wishes to have its 'shop rights' recognized so that it may continue to use the trucks that it purchased in good faith from Monroe Trucking regardless of whether or not the truck design infringes on the patent."  Motion, docket #15 at 6.

Plaintiff timely responded to the motion arguing that "inventing" a device and "manufacturing" a device are separate acts and that the structure was conceived and developed without any compensation from, or involvement of, the City of Boulder.  Plaintiff also contends that, before a "shop rights" defense may be considered, the Court must perform a comparison of the products provided to Boulder by Clarkson (inventor) and Defendant Monroe to determine whether they are identical.   Moreover, Plaintiff claims that the trucks purchased from Monroe are not

5

infringing the patent; rather, the "sanding equipment [Boulder is] loading into the back of said trucks ... are the allegedly infringing devices in question." Finally, Plaintiff questions whether Boulder knew that purchases from Monroe were covered under a "shop rights" defense previously created.

Boulder replies that no comparison is necessary since it assumes, for purposes of its motion, that the Monroe equipment infringes Plaintiff's patent, but contends that Boulder is not liable for infringement under the shop rights defense. Furthermore, Boulder argues that the question whether the doctrine protects an entity which has purchased infringing goods from a third party is a question of law that can be resolved on summary judgment. Finally, Boulder asserts it directed Clarkson to perform the work, perfect the design and bring the device to fruition; thus, it is entitled to shop rights to use the device without paying a royalty or license fee.

## LEGAL STANDARDS

### I.    Treatment of a *Pro Se* Litigant's Pleadings

A federal court must construe a *pro se* plaintiff's "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers. [The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations and citations omitted). The Tenth Circuit interpreted this rule to mean, "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.*; *see*

6

*also Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)).

## II.    Dismissal under Fed. R. Civ. P. 56

A motion for summary judgment serves the purpose of testing whether a trial is required. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003).  The Court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A fact is material if it might affect the outcome of the suit under the governing substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The moving party bears the initial responsibility of providing to the Court the factual basis for its motion.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial."  *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002).  Only admissible evidence may be considered when ruling on a motion for summary judgment.  *World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985).

The non-moving party has the burden of showing there are issues of material fact to be determined.  *Celotex*, 477 U.S. at 322.  That is, if the movant properly supports a motion for summary judgment, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing a genuine factual issue for trial.  Fed. R. Civ. P. 56(e); *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("[t]he mere existence of *some* alleged factual dispute

between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.") (emphasis in original) (citation omitted); *see also Hysten v. Burlington Northern & Santa Fe Ry.*, 296 F.3d 1177, 1180 (10th Cir. 2002). These specific facts may be shown "'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves.'" *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 324). "[T]he content of summary judgment evidence must be generally admissible and . . . if that evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, *i.e.*, the evidence must be based on personal knowledge." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005). "The court views the record and draws all inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

## ANALYSIS

The "shop rights" doctrine is a judicially created defense to patent infringement. *Beriont v. GTE Labs., Inc.*, 535 F. App'x 919, 923 (Fed. Cir. 2013). "It applies when an employer is sued for patent infringement by an employee who created the patented invention with the employer's resources while under its employment, even though the employer otherwise has no legal rights to the resultant invention." *Id.* (citing 8 Chisum on Patents § 22.03[3]).

> Since the servant uses his master's time, facilities and materials to attain a concrete result, the latter is in equity entitled to use that which embodies his own property and to duplicate it as often as he may find occasion to employ similar appliances in his business. But the employer in such a case has no equity to demand a conveyance of the invention, which is the original conception of the employee alone, in which the employer had no part. This remains the property of him who conceived it, together with the right conferred by the patent, to exclude all others than the employer from the accruing benefits.

8

*Id.* at 923-24 (quoting *United States v. Dubilier Condenser Corp.*, 289 U.S. 178, 188-89 (1933)).

Thus, "a shop right will be found where the employer shows that the invention was developed by

his employee during the employer's time *or* with the assistance of the employer's property or labor."

*Wommack v. Durham Pecan Co., Inc.*, 715 F.2d 962, 965 (5th Cir. 1983) (citing *Dubilier Condenser*

*Corp.*, 289 U.S. 178) (emphasis added)).   The scope of a shop right is limited: "[a] shop right

permits the employer to use the subject of the patent for his own purposes, but not to sell or prohibit

others from using it. The inventor retains a valid patent."   *Id.*

In this case, all parties agree that Clarkson invented and created a design for his structure at

home on his own computer and on his own time.   They also agree that Boulder asked Clarkson to

create a new structure and, after the design was completed, Boulder permitted Clarkson to build the

structures during his work hours using Boulder's tools, trucks and labor.   Accordingly, there is no

dispute of material fact that Boulder retains a shop right of the structures built by Clarkson during

his employment at Boulder.   *See* Clarkson Affidavit, ¶ 9 ("I gave Boulder the right to use only what

they paid me to make, and nothing more.").

However, those structures have been "phased out" and are no longer used by Boulder.   Thus,

the question here is whether Boulder retains a shop right on equipment purchased from Monroe

Truck Equipment ("Monroe"), which Plaintiff alleges infringes his patent.   Plaintiff contends that,

before a shop rights defense may be considered, the Court must perform a comparison of the

products provided to Boulder by Clarkson and Monroe to determine whether they are identical.

Boulder counters that, even if the equipment infringes Plaintiff's patent, they remain entitled to a

shop right to any infringing device.

Boulder attempts to persuade the Court that a shop rights defense applies to infringing

products purchased from a third party by citing to *McElmurry v. Arkansas Power & Light Co.*, 995 F.2d 1576 (Fed. Cir. 1993).  In *McElmurry*, a hired consultant developed an improvement to the company's electrostatic precipitator system and the company, then, provided the specifications of the improvement to a contractor, who won the bid over the consultant, to manufacture the devices. *Id.* at 1584.  The court found that a shop right entitled the company to duplicate the device and continue to use it in its business.  *Id.*

Here, unlike in *McElmurry*, it is unknown whether the challenged structures were manufactured using Plaintiff's patented specifications.  It is unclear whether the structures have been "duplicated," and there is no indication they have been by Boulder.  A principle underlying the shop rule is that "when an employee has used his employer's time and equipment to make an invention, the employer should be able to use the device without paying a royalty."  *Wommack*, 715 F.2d at 967.  In this case, there is no evidence that Boulder provided to Monroe the Plaintiff's patent specifications or that the Monroe truck units were manufactured using Boulder's property or labor. Accordingly, the Court finds that *McElmurry* does not support Boulder's contention that the shop right doctrine applies to ***any*** alleged infringing devices they possess.

In fact, the Court has found no other case to support Boulder's proposition.  Accordingly, without case or statutory authority, the Court will not extend the shop right defense to apply automatically to any device within an employer's possession, which is alleged to have infringed on a patent applied to the invention for which the employer assisted an employee to develop.  Such automatic application undermines the very principles underlying the defense: "where a servant, during his hours of employment, working with his master's materials and appliances, conceives and perfects an invention for which he obtains a patent, he must accord his master a non-exclusive right

10

to practice the invention." *Dubilier Condenser Corp.*, 289 U.S. at 188.  Accordingly, for the shop rights defense to apply, the Court must, at least, evaluate and compare the Clarkson structure and the Monroe equipment to determine whether the Monroe equipment can be said to have been derived by Clarkson's design/development.  Even if answered in the affirmative, however, this Court questions whether the shop right defense can be applied where, as here, there is no question the equipment used was ***not*** constructed using Boulder's property or labor.  Nevertheless, at this stage of the litigation, before discovery has ensued, the Court finds that the shop right defense does not entitle Boulder to summary judgment.

In light of this recommendation, the Court need not address the other arguments raised by Plaintiff in response to the present motion.

## CONCLUSION

Defendant City of Boulder contends that its shop right in Plaintiff's invention applies to any device to which Plaintiff's patent applies and, thus, assuming the Monroe equipment infringes the patent, Boulder is protected from liability.  However, the Court concludes that an allegation or assumption of infringement does not automatically entitle Boulder to a shop right defense for equipment that was not developed with its property or labor.  Therefore, at the very least, the trier of fact must address questions of material fact as to whether the Monroe equipment was derived and/or developed using Plaintiff's patent. Even then, this Court questions the application of the shop right defense under the circumstances presented in this case.

This Court respectfully recommends that the Defendant City of Boulder's Motion for Summary Judgment [filed March 28, 2014; docket #15] be **denied**.

Dated at Denver, Colorado, this 14th day of May, 2014.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge